(December 2, 2003)

■ Nancy L. Nausch et al., as Cofiduciaries of the Estate of Richard M. Nausch, Deceased, Appellants, v AON Corp. et al., Respondents. [769 NYS2d 481]—

Judgment, Supreme Court, New York County (Charles Ramos, J.), entered July 25, 2002, which awarded judgment to the AON defendants and defendant Space Risks International against plaintiffs and dismissed the amended complaint, bringing up for review an order of the same court and Justice, entered July 18, 2002, granting defendants' motion for summary judgment and denying plaintiffs' cross motion for partial summary judgment, unanimously reversed, on the law, without costs, defendants' motion denied, the complaint reinstated, plaintiffs' cross motion granted and the matter remanded for trial before a different justice. Appeal from the order unanimously dismissed, without costs, as subsumed within the appeal from the judgment.

In a previous appeal, we remanded this matter for findings on the issue of whether the contract was at will or for a term of years, in which regard parol evidence could be considered (283 AD2d 353 [2001]). On remand, the motion court found, however, that parol evidence could not be considered by application of the statute of frauds, a new defense raised subsequent to our prior order and hence not reviewed by us. Moreover, the court concluded that various memoranda submitted in connection with the motion did not establish the term of the contract.

Although General Obligations Law § 5-701 (a) (1) states that if the agreement by its terms is not to be performed within one

year, it is void unless it is evidenced by a writing or writings, section 5-701(b) (3) (d) allows the writing requirement to be satisfied by memoranda, notes or other documentation basically establishing the agreement's existence. For these purposes, the memoranda need not be in one document, but may be pieced together from separate writings if they can be shown to be related to the transaction (*Crabtree v Elizabeth Arden Sales Corp.*, 305 NY 48, 54 [1953]).

Our present review of the record persuades us that rather than creating an at-will employment arrangement, the parties agreed to an employment contract for a term of five years, with stepped-up compensation, as well as bonuses predicated on satisfactory execution of projected business goals. Memoranda submitted in the record include the September 28, 1994 employment agreement, which specifies that plaintiff's decedent Richard Nausch would be President and CEO of the newly formed company, that the parties' long-term goal was to develop an estimated $5 million in business over the next five years, and that Nausch would use his best efforts to accomplish this. The agreement provided that Nausch would be compensated at a base salary of $350,000 annually for the first two years, to be increased by 10% starting in year three and continued thereafter, with guaranteed bonuses specified for the first three years. Additional incentive compensation was also specified. That this letter agreement clearly contemplated a specific term of years is underscored by other memoranda in the record. The letter agreement had designated George Corde Executive Vice-President of Rollins Hudig Hall (RHH) (of which Nausch would be an employee) and Chairman and CEO of RHH Aviation, a division of defendant AON. Corde's deposition testimony makes clear how important Nausch's participation was to developing AON's business in space operations insurance, a market largely controlled by Nausch's then-current employer, and the urgency of establishing an adequate compensation package for Nausch. In a December 23, 1993 internal memorandum from Corde to Patrick Ryan, Chairman of AON, Corde noted the ongoing efforts to recruit Nausch, who was described as a major talent in the space operations sector of the insurance trade. Corde indicated that in order to induce Nausch to leave his then-current employment and assume the responsibilities set forth elsewhere in the memorandum, AON/RHH would have to offer him a three-to-five-year contract offering annual compensation substantially in excess of his then-current compensation with additional monetary incentives. The memorandum concluded by noting how essential Nausch was to capturing a larger share of a lucrative, but tightly controlled, market. Another internal

memorandum from Corde, dated January 24, 1994, to Arthur Quern at RHH, worked out a five-year schedule for the new business, including anticipated revenues and expenses, also including Nausch's compensation over that five-year period. Corde analyzed various formulas for compensation, but he clearly contemplated a five-year horizon. Handwritten notes from Corde to Quern apparently faxed on or about January 24, 1994 record that a three-year contract versus a five-year contract had been discussed with Nausch, with varying compensation formulas specific to each, and that Nausch wanted a five-year contract. The notes also calculated projected revenue and expenses, including compensation and incentives, over five years. This evidence, viewed in the aggregate, makes clear that both parties intended the agreement to cover five years of employment. Hence, we reinstate the complaint and remand for trial, with the further directive that trial be conducted before a different justice. Concur—Buckley, P.J., Nardelli, Tom, Mazzarelli and Gonzalez, JJ.